Filed 11/3/25  P. v. Peraza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C101323 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CR-FE-1998-0008639, SF074536B) |
| v. | |
| JOHNNIE RAY PERAZA, | |
| Defendant and Appellant. | |

Defendant Johnnie Ray Peraza appeals the trial court's refusal to take action on his petition for resentencing under Penal Code[1] section 1172.6.  He contends the trial court effectively but erroneously denied his petition as successive.  The People contend that through a combination of collateral estoppel and the law of the case doctrine, Peraza is ineligible for relief under section 1172.6.  We agree that issue preclusion forecloses Peraza from challenging his first degree murder conviction.  However, a review of the record discloses that no court has previously reviewed Peraza's allegations that he is eligible for relief from his second degree and attempted murder convictions under section

_____

[1]     Undesignated statutory references are to the Penal Code.

1

1172.6, and the trial court erred in concluding otherwise. We conclude that the failure to appoint counsel and hold a prima facie hearing on the first and second degree murder convictions was harmless, but the same cannot be said with respect to his attempted murder conviction. We thus reverse the denial of the petition as to that count and remand for further proceedings.

## FACTUAL AND LEGAL BACKGROUND

The events that gave rise to Peraza's convictions are summarized in our prior appellate opinions. (*People v. Valdez* (2005) 126 Cal.App.4th 575 (*Valdez*); *People v. Valdez et al.* (Feb. 4, 2005, C037039) [nonpub. portion] (*Valdez*, nonpub. portion); *People v. Peraza* (Feb. 7, 2022, C092159) [nonpub. opn].)[2] Although we do not rely on the factual summary to conduct our review, we recount some factual background as summarized in our prior decisions to provide context.

"Defendants' convictions are based on events that occurred on July 13, 1998. . . . [Citation.] [¶] At about 4:15 a.m., defendant Valdez knocked at the door to Ronny Giminez's apartment. When Giminez opened the door, Valdez asked if he was 'Ronny' and whether apartment 3 was for rent. As Giminez looked toward apartment 3, Valdez fired a gun. The bullet missed Giminez but penetrated the ceiling of the apartment." (*Valdez*, nonpub. portion, *supra*, C037039.) "[A]fter going to Ronny Giminez's apartment and shooting at him, defendant and his codefendant Elisio Valdez went to Andrea Mestas's apartment and asked to use the telephone, but Mestas said, 'No, Elisio, no.' Valdez then shot Mestas twice in the chest at close range, killing her. Mestas was pregnant with a 16-to-17-week-old fetus, which also died as a result of Mestas's death. Valdez and defendant then returned to Giminez's apartment and fired several gunshots

---

[2]     On the court's own motion, we incorporated by reference the record in Peraza's direct appeal, case No. C037039, and we take judicial notice of our prior opinions in case No. C037039 and case No. C092159. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

into the apartment as they drove by. Approximately an hour and a half later, defendant went to his girlfriend N.D.'s apartment, forced his way in, and held her and her children hostage at gunpoint.

"The prosecutor argued that defendant and Valdez had gone to Mestas's apartment to kill her boyfriend, D.O., on orders from their gang. The prosecutor also presented evidence the gang considered Mestas a 'rat' and a 'snitch.' Mestas's daughter, who was in the home, testified Valdez was the shooter. A witness testified defendant had later indicated that he was the shooter. In any event, Mestas was shot with defendant's gun." (*People v. Peraza, supra*, C092159.)

The court instructed the jury with, inter alia, CALJIC Nos. 3.01 (aiding and abetting), 3.02 (natural and probable consequences), 8.20 (premeditated murder), 8.30 (second degree murder, unpremeditated), 8.31 (second degree murder, dangerous act), 8.11 (malice aforethought), 8.80.1 (multiple-murder special circumstance), and 8.67 (premeditated attempted murder).

A jury found Peraza and Valdez guilty of several offenses, including the following with respect to Mestas: first degree murder, second degree murder of her fetus (§ 187) (counts 1 & 2, respectively) and first degree residential burglary (count 3). The jury also found true a multiple-murder special-circumstance allegation (§ 190.2, subd. (a)(3)). The jury found the defendants guilty of the following with respect to Gimenez: premeditated attempted murder (§§ 664, 187) (count 4) and shooting at an inhabited dwelling (count 5). The jury also found Peraza guilty of street terrorism (count 6 as related to count 5) and guilty of being a felon in possession of a weapon under former section 12021, subdivision (a)(1) (count 8). The remaining charges and convictions pertained to N.D. and occurred after the murders and attempted murder.

    *1. Direct Appeal*

Peraza appealed. Initially, a different panel of this court found merit in his contention that to be liable for the murder of Mestas's fetus under an implied malice

3

theory, he had to have reason to believe that Mestas was pregnant. We reasoned this was so "because the death of a fetus is not the natural and probable consequence of shooting and killing a woman; it is the natural and probable consequence of shooting and killing a pregnant woman." (*People v. Peraza* (C037039) opn. filed June 25, 2003, review granted Oct. 1, 2023, S117778, vacated & trans. for reconsideration in light of *People v. Taylor* (2004) 32 Cal.4th 863.) We reversed the second degree murder conviction, concluding that without reason to believe Mestas was pregnant, the shooter could not have subjectively appreciated the risk to fetal life as a consequence of shooting the woman. (*Ibid*.)

The California Supreme Court granted the prosecution's petition for review and ultimately directed us to vacate our prior decision and to reconsider the cause in light of *People v. Taylor, supra*, 32 Cal.4th 863 (*Taylor*).

*2. Appeal on Remand*

On remand, this court reinstated Peraza's second degree murder conviction in light of *Taylor*. This court also addressed a number of claims, including instructional error on the basis that the jury instruction on the natural and probable consequences doctrine did not identify a target offense. (See *People v. Prettyman* (1996) 14 Cal.4th 248, 273, quoting *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [reversible error in failing to identify a target offense if there is " ' "a reasonable likelihood that the jury has applied the challenged instruction in a way" ' that violates the Constitution"].) We concluded this was harmless error because, in part, no one argued to the jury that a natural and probable consequences theory applied. We also rejected Peraza's claim the jury could have relied on any of the other crimes charged or uncharged, because Peraza did not provide any meaningful analysis of how the jury could have misapplied the instruction. (*Valdez*, nonpub. portion, *supra*, C037039.)

This court also rejected Peraza's challenge to CALJIC No. 8.80.1 (multiple-murder special circumstance) on the basis that it purportedly included the inapplicable

4

phrase "reckless indifference to human life." We concluded the jury was not incorrectly instructed; the instruction given did not contain the objectionable phrase. Rather, the correct instruction as given required that to find the special circumstance allegation true, the jury had to find Peraza was either the actual killer or aided and abetted the crime with the intent to kill. (*Valdez*, nonpub. portion, *supra*, C037039.)

We affirmed the convictions and directed the trial court to modify the sentence.[3] (*Valdez, supra*, 126 Cal.App.4th at pp. 583-584.)

### 3. *2019 Petition Pursuant to Section 1172.6*

In January 2019, Peraza filed his first petition pursuant to section 1172.6[4] seeking relief from his first degree murder conviction. It was summarily denied based on the trial court's determination that the multiple-murder special-circumstance finding showed that he aided and abetted in the murder with the intent to kill. It does not appear that Peraza appealed this denial.

### 4. *2020 Petition Pursuant to Section 1172.6*

In February 2020, Peraza filed a second petition seeking relief from his first degree murder conviction. "Without appointing counsel, the trial court denied the petition, noting it had denied defendant's previous petition on the grounds defendant could not make a prima facie showing of eligibility as a matter of law." On February 2, 2022, a different panel of this court affirmed, but remanded the matter to address an

---

[3] After a clerical error by this court, the trial court resentenced Peraza in 2004, while his direct appeal was pending review with the Supreme Court. On appeal from that sentence, we vacated the trial court's 2004 judgment, reinstated the trial court's original judgment from 2000, and dismissed the appeal. (*People v. Peraza* (Feb. 4, 2005, C046195).) For reasons not apparent from the record before us, our order directing reinstatement of the original sentence was not fully effectuated until 2014.

[4] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6 without substantive change in text. (Stats. 2022, ch. 58, § 10.) For the sake of clarity, we will only refer to the statute as section 1172.6.

unauthorized sentence and incorrect sentencing credits. (*People v. Peraza, supra*, C092159.) In addressing the 1172.6 petition, this court determined that the jury's true finding on the multiple-murder special-circumstance allegation "necessarily means the jury found defendant was either the actual killer or aided and abetted the actual killer with intent to kill. By finding this special-circumstance allegation true, the jury made precisely the same finding it would be required to make to convict defendant of multiple murders under the new law." (*People v. Peraza, supra*, C092159.)[5]

     5.  *Current Section 1172.6 Petition*

On February 14, 2024, Peraza filed the instant petition pursuant to section 1172.6, seeking relief from his convictions for first degree murder, second degree murder, attempted murder, and requesting counsel. On May 17, 2024, the court notified Peraza in writing that his petition would not be considered because it and the appellate court "have already addressed your two prior Petitions for Resentencing pursuant to Penal Code section 1172.6."[6] On June 10, 2024, Peraza filed a notice of appeal.

---

[5]    We note that our prior decision in case No. C092159 discusses Senate Bill No. 775 (2021-2022 Reg. Sess.), which amended section 1172.6 to allow defendants to challenge murder convictions obtained under improper use of an implied malice theory and to challenge attempted murder convictions obtained under the natural and probable consequences theory. (*People v. Peraza, supra*, C092159.) However, we see no indication that the parties addressed the applicability of the change in statute to Peraza's second degree or attempted murder convictions in that appeal.

[6]    The trial court also characterized Peraza's motion as a "petition for resentencing due to a change in the law per Penal Code section 1172.1." We agree with the People that this seems unwarranted but immaterial to the issue at bar. Peraza does not contend otherwise.

## DISCUSSION

### 1. Legal and Analytical Framework

#### A. Senate Bills Nos. 1437 and 775

Nearly two decades after Peraza was sentenced, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) " 'to more equitably sentence offenders in accordance with their involvement in homicides.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) The Legislature eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Patton* (2025) 17 Cal.5th 549, 558; *Curiel*, at pp. 448-449; *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Patton*, at p. 558; *Curiel*, at p. 448.)

Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, expanded the scope of potential relief by applying Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).) The legislation also extended relief to defendants convicted of murder "under any 'other theory under which malice is imputed to a person based solely on that person's participation in a crime.' " (*People v. Antonelli* (2025) 17 Cal.5th 719, 725, quoting § 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

Section 1172.6 provides a procedure for a person who was convicted of murder or attempted murder under the natural and probable consequences doctrine. (*Curiel, supra*, 15 Cal.5th at pp. 449-450; *Strong, supra*, 13 Cal.5th at p. 708.) If the petition contains all the statutorily required information, the sentencing court, upon request, must appoint counsel to represent the petitioner. (§ 1172.6, subd. (b)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 962-963 (*Lewis*).) After briefing by the parties, the court must hold a

7

hearing to determine whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1172.6, subd. (c); see *Curiel*, at p. 450.)

A defendant whose resentencing petition is denied before appointment of counsel must " 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974.) "[S]pecifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Ibid*.) Failing to appoint counsel is harmless error only if we can determine that the established facts in the record of conviction refute the allegations in the petition. (See *Lewis*, at p. 973 [*Watson* applies to error in failing to appoint counsel at outset of § 1172.6, subd. (c) petition process because "the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so" and the Legislature "created a purely statutory right to counsel that attaches before the issuance of an order to show cause"].)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime. (§§ 188, subd. (a)(3), 189[, subd. ](e); see *Lewis, supra*, 11 Cal.5th at p. 971.)" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

In this case, the parties agree that the trial court's order should be treated as a summary denial of the petition. "We independently review the denial of a resentencing

petition at the prima facie stage, whether the denial is based on the issue preclusion doctrine [citation], the law of the case doctrine [citation], or, more generally, failure by the petitioner to make a prima facie showing under section 1172.6." (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238-1239.)

B. The Record of Conviction

Initially, neither party supplied the jury instructions or verdicts as part of the record before us, and their analysis was therefore not informed by them.[7] After we incorporated the record in the underlying case (No. C037039), including the jury instructions, we directed the parties to provide supplemental briefing on the impact of the instructions on Peraza's petition and to discuss any impact the natural and probable consequences instruction had on the second degree feticide conviction. We also directed the parties to discuss the interplay between the act that caused the mother's death and that of the fetus and, if they were the same act, whether relief was foreclosed on the feticide conviction in light of *Taylor, supra*, 32 Cal.4th 863 and section 1172.6 jurisprudence. The parties have complied with our request and our analysis is informed by those responses.

First, however, we must address Peraza's insistence that we cannot consider any facts from the case. According to him, the determination of whether the petitioner has made a prima facie showing for relief "is made in the abstract, 'regardless of the facts,' " such that we cannot even determine whether he aided and abetted the actual killer rather than "someone," or whether the same act killed both Mestas and her fetus, or even whether the fetus was in Mestas's womb or in someone else's womb. Citing to *Curiel, supra*, 15 Cal.5th at page 470, he maintains that the " 'question is not whether it is *likely*'

---

[7]     We note that, as in the prior appeal in case No. C092159, the jury instructions were not included in the record before us. Instead, the parties rely on language in the trial court's order denying relief. This order includes only a few of the relevant instructions.

9

that the offense was committed in a certain way, 'but whether the court's jury instructions foreclose that possibility as a *matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage.' " While we agree that this is our task,[8] we disagree that in doing so we must turn a blind eye to established facts from the record. In deciding whether a petitioner has made a prima facie showing for relief, the court "looks beyond the face of the petition" to the record of conviction, which " 'necessarily inform[s] the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*People v. Patton, supra*, 17 Cal.5th at p. 563.) If we could not consider undisputed facts established at trial such as the identity of the victim, potential perpetrators, or unchallenged causes of death, it would thwart the goal of filtering out meritless petitions and render meaningless the screening process set out by statute and explained through case law.

Relevant to the discussion here, it is undisputed that Peraza and Valdez were the perpetrators, Mestas, her fetus, and Giminez were the victims, and that Mestas was shot twice in the chest at close range, died as a result and, as a result of her death, her fetus died. Peraza concedes these facts in his opening brief. In noting these undisputed facts established at trial, we are not engaging "in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 972; accord, *People v. Patton, supra*, 17 Cal.5th at p. 567 ["should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage"].)

---

**8** We therefore reject the People's assertion that the proper test for a prima facie showing is whether there is a reasonable likelihood that the jury understood the given instructions as permitting conviction on any theory of imputed malice. We conclude this approach is inconsistent with our mandate to accept the allegations as true unless refuted as a matter of law. (See *Lewis, supra*, 11 Cal.5th at pp. 966, 971.)

*2. Analysis*

A.  First Degree Murder of Mestas

Peraza acknowledges that in our 2022 opinion, this court determined he could not obtain relief under section 1172.6 for his first degree murder conviction.  Nevertheless, he contends that his conviction should be assessed anew in light of *Curiel, supra*, 15 Cal.5th 433.  The People contend that Peraza is precluded from challenging his first degree murder conviction under issue preclusion and the law of the case doctrine.

The law of the case doctrine provides, "[W]hen an appellate court ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ." ' " (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)

Similarly, issue preclusion (also known as collateral estoppel) precludes relitigation of issues argued and decided in prior proceedings if several threshold requirements are fulfilled.  (*Curiel, supra*, 15 Cal.5th at p. 451.)  " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.' " (*Ibid*.)  The identical issue requirement "addresses whether 'identical factual allegations' are at stake in the two proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)  " '[I]n determining whether the identity [of issues] requirement is satisfied, courts must be mindful of the need to distinguish "issues" from "legal theories." ' " (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1327.)  " ' "Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' [Citation.]  'The party asserting collateral estoppel bears the burden of establishing these requirements.' " (*Curiel*, at pp. 451-452; see *Lucido*, at p. 341.)  And " '[i]n considering

11

whether these [five] criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.' " (*Curiel*, at p. 452.) Indeed, "a relevant jury finding is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' " (*Id*. at pp. 453-454, quoting *Strong, supra*, 13 Cal.5th at p. 710.)

While we agree with Peraza that the trial court erred by failing to appoint counsel and hold a prima facie hearing on a facially valid petition, we conclude this procedural statutory error was harmless as it is not reasonably probable that Peraza's first degree murder claim would have survived the prima facie stage. (*Lewis, supra*, 11 Cal.5th at p. 973.) We agree with the People that the doctrine of issue preclusion forecloses Peraza's challenge to his first degree murder conviction.

When comparing the underlying prosecution of Peraza to the section 1172.6 proceedings with respect to his first degree murder conviction, we note that the parties are the same, and "the contested factual issues actually and necessarily decided within each proceeding are identical." (*People v. Beaudreaux, supra*, 100 Cal.App.5th at p. 1241.) Peraza had "the incentive and opportunity" to litigate the issue of his role in Mestas's killing and whether he was the actual killer or aided and abetted the killer with the intent to kill. (*Ibid*.; see also *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1118-1120 [issue is actually litigated when it is properly raised, the parties had the opportunity to litigate it, it is submitted for determination and is determined].) The issue was decided, and the decision is final and on the merits. (*Curiel, supra*, 15 Cal.5th at p. 452.) Thus, all the threshold requirements for application of issue preclusion are satisfied. And if "the jury's verdicts, and the factual findings they necessarily reflect" constitute "all of the factual findings necessary to support a murder conviction under current law," we must give effect to those findings. (*Id*. at p. 465.)

12

As further noted in *Curiel*, to establish liability under a theory of direct aiding and abetting, " 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*Curiel, supra*, 15 Cal.5th at p. 466.)  In deciding Peraza's liability for Mestas's murder, the jury specifically found Peraza guilty of first degree murder and found true the multiple-murder special circumstance after having been instructed in accordance with CALJIC No. 8.20 and CALJIC No. 8.80.1.  CALJIC No. 8.20 required the jury to fix the murder at first degree "[i]f you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was a result of deliberation and premeditation."  CALJIC No. 8.80.1 stated that to find the allegation true, the jury had to find the defendant was the actual killer or, if the jury was unable to decide whether the defendant was the actual killer, the jury "cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided and abetted or assisted any actor in the commission of the murder in the first degree."  Thus, in finding this special circumstance allegation true, the jury necessarily found that Peraza himself had intent to kill and either actually killed Mestas himself or directly aided and abetted Valdez in the commission of her first degree murder—which constitute factual findings necessary to support his conviction for first degree murder under current law.  (See *Curiel, supra*, 15 Cal.5th at p. 468; *id*. at p. 467 [to deny relief at the prima facie stage, "we must be confident the jury necessarily found the actus reus [and mens rea] required for direct aiding and abetting murder" (italics omitted)].)  Contrary to Peraza's claim, the jury's verdicts and findings do not leave open the possibility that it found him guilty based on a theory of natural and probable consequences or on a theory that Peraza actually intended to kill Mestas's boyfriend.  Therefore, we conclude that as a matter of law the jury finding of true on the special circumstance of multiple murder establishes Peraza's

ineligibility for resentencing on his murder conviction. Peraza's reliance on inapplicable felony-murder jurisprudence does not convince us otherwise.

Peraza urges us to find an equitable exception to issue preclusion because, he argues, *Curiel* represented a significant change in the law. The "well-settled equitable exception to the general rule" of issue preclusion "holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue." (*Strong, supra*, 13 Cal.5th at p. 716; see also *Curiel, supra*, 15 Cal.5th at p. 454.) " ' "Even if the[ ] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles" of promoting efficiency while ensuring fairness to the parties.' " (*Curiel*, at p. 454.)

In *Curiel*, the Supreme Court determined that where the jury was permitted to find aiding and abetting liability for murder based on the now-prohibited natural and probable consequences doctrine, intent to kill is "insufficient standing alone to render a person culpable for another's acts." (*Curiel, supra*, 15 Cal.5th at p. 468.) Peraza claims the jury instructions and verdicts in his case at most demonstrate the jury found Peraza's actions satisfied the mens rea required for murder but did not determine they satisfied the required actus reus. He further contends that because our prior 2022 opinion denying relief under section 1172.6 was issued pre-*Curiel*, our prior decision did not encompass all the relevant findings required by *Curiel*. But while *Curiel* reminded us that for issue preclusion to apply, the jury finding must necessarily resolve *all* the issues regarding the elements of murder (*Curiel*, at p. 465), it did not signify a change in the law regarding the elements of first degree murder. Indeed, both parties agree with this point. Accordingly, our 2022 opinion was based on the law regarding first degree murder as it still exists post-*Curiel*. We disagree that *Curiel* provides new legal authority warranting disregarding the issue preclusion doctrine in this case as to Peraza's petition. And our conclusion that the jury verdicts and findings, in light of the instructions, necessarily

found all the elements of first degree murder under current law, is entirely consistent with *Curiel.*

B. Second Degree Feticide

Peraza contends that his petition cannot be denied at the prima facie stage because his claim to relief has not previously been addressed, and the record does not conclusively refute his allegations that he was convicted of second degree murder under the natural and probable consequences theory. He contends that because the court instructed on the natural and probable consequences doctrine but failed to identify a target offense, the jury was allowed to rely on a theory that he aided and abetted other crimes that led to those offenses.

The People agree that Peraza's challenge to his second degree murder conviction was not previously considered by either the trial court or this court but nevertheless contend the law of the case doctrine applies to foreclose his claim that the jury could have relied upon the natural and probable consequences theory in finding him guilty of second degree murder. We disagree with both parties.

"Absent an applicable exception, the [law of the case] doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.' [Citation.] As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact." (*People v. Barragan, supra*, 32 Cal.4th at p. 246.)

In our direct appeal decision following remand, we discussed the fact that the parties did not argue a natural and probable consequence theory to the jury and concluded that Peraza failed to establish prejudice when he failed "to provide any meaningful analysis demonstrating how the jury could find that [the murders, residential burglary, shooting at an inhabited dwelling convictions, and street terrorism] were natural and probable consequences of the commission of [being a felon in possession of a firearm, assault with force likely to produce great bodily injury, and false imprisonment offenses],

15

which occurred *after* the commission of the [previous convictions]." (*Valdez*, nonpub. portion, *supra*, C037039.)

Contrary to the People's contention, our determination that Peraza failed to meet his burden on appeal regarding prejudice did not constitute a principle or rule of law regarding the applicability of the natural and probable consequences theory. (See *People v. Stanley* (1995) 10 Cal.4th 764, 786 [the doctrine of law of the case applies when a reviewing court deciding an appeal "states in its opinion a principle or rule of law necessary to the decision"]; see also *People v. Gray* (2005) 37 Cal.4th 168, 197 [to apply law of the case doctrine, the point of law involved must have been presented and determined by the court].) Thus, the law of the case doctrine does not apply.[9] However, we determine the error to be harmless for another reason: because the jury's verdicts and findings preclude Peraza from relief.

Peraza contends that it "cannot be assumed that the second degree murder of the fetus (Count 2) was committed by the same act and with the same intent as the first degree murder charged in Count 1 because the prima facie determination is made 'regardless of the facts.' " The People respond that Peraza is ineligible for relief because, as the natural and probable consequences theory was not argued to the jury, "there does not appear to be any now-invalidated theory of murder on which the jury relied" to find Peraza guilty of second degree murder.

As discussed *supra*, we concluded that the required conditions for issue preclusion were met with respect to first degree murder. The same reasoning applies to Peraza's second degree murder conviction as the jury found him guilty of this murder in the same proceeding, with the same parties, and he had the opportunity and incentive to litigate the issue of his intent and involvement in killing Mestas's fetus and whether he was the

---

[9]    We likewise reject this contention as applied to Peraza's attempted murder conviction.

16

actual killer or he aided and abetted the killing. For the following reasons, we conclude the jury's finding on the multiple-murder special-circumstances allegation necessarily establishes the jury found he had express malice and was either the actual killer or aided and abetted in the second degree feticide.

"Murder is the unlawful killing of a human being or a fetus 'with malice aforethought.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507, quoting § 187, subd. (a).) Malice may be either express or implied. (§ 188, subd. (a).) "If it is shown that the killing resulted from an intentional act with express or implied malice, as defined in subdivision (a), no other mental state need be shown to establish the mental state of malice aforethought." (§ 188, subd. (b).) "Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' [Citation.] ' "To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical." ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)

" '[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages, or instigates, the commission of the crime.' " (*People v. Johnson* (2016) 62 Cal.4th 600, 630.) " '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that

17

act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' " (*People v. Reyes, supra*, 14 Cal.5th at pp. 990-991, quoting *People v. Powell* (2021) 63 Cal.App.5th 689, 712-713.)

In this case, Mestas's death was the proximate cause of the death of her fetus. As we previously explained, the jury's findings established that Peraza either actually and intentionally killed Mestas or that he, with the specific intent to kill, aided and abetted in the commission of her first degree murder. "An intent to kill is the equivalent of express malice, at least when there is no question of justification or excuse" (*People v. Coley* (2022) 77 Cal.App.5th 539, 547), and if it is shown that the killing resulted from an intentional act with express malice, no other mental state need be shown to establish the required mens rea for murder. (§ 188, subd. (b).) It is indisputable that the shooting of Mestas led to both her murder and the murder of the fetus. The jury necessarily found Peraza personally harbored intent to kill (express malice) and either killed the fetus when he killed Mestas or aided and abetted the murder of the fetus when he aided and abetted Mestas's murder. (Cf. *People v. Young* (1987) 189 Cal.App.3d 891, 910 [finding that because the requisite mens rea for first degree murder was express malice, "the jury necessarily found express malice on the attempted murders committed as part of a single, indivisible transaction"].)

*People v. Coley* is instructive. In that case, two victims were walking along a highway when shots rang out from a car. One victim suffered a fatal wound, and the other victim jumped over a guardrail and avoided being shot. The source of the gunshots was a car occupied by the defendant and his codefendant. The prosecution's theory at trial was that the defendant was the driver and the codefendant was the shooter when they both committed murder and attempted murder. (*People v. Coley, supra*, 77 Cal.App.5th

18

at p. 542.)  The jury found the defendant guilty of second degree murder and attempted murder without premeditation.  (*Ibid*.)

In reviewing the denial of an 1172.6 petition challenging the second degree murder conviction, the appellate court noted that the defendant was convicted based on his aiding and abetting the same shooting that gave rise to the attempted murder conviction.  The court concluded that the jury's finding that the defendant had an intent to kill during the commission of the attempted murder meant the jury also necessarily found he personally harbored intent to kill or express malice when he aided and abetted the second degree murder.  (*People v. Coley, supra*, 77 Cal.App.5th at pp. 547-548.)  The court affirmed the denial of the petition at the prima facie stage.  (*Id*. at p. 548.)  Although in *Coley* the jury was not instructed on the natural and probable consequences theory, we conclude *Coley*'s reasoning applies even more forcefully here, where the second degree murder was inextricably intertwined with the intentional killing of Mestas either committed or aided by Peraza.  Although the natural and probable consequences theory was instructed in Peraza's case, by finding the multiple-murder special circumstance true, the jury necessarily found he harbored express malice when he either killed Mestas or aided and abetted her premeditated murder.  It is not legally possible to ignore that finding when considering the jury's assignment of Peraza's liability for the feticide.  This is especially true where "[e]xpress malice does not mean an intent to kill a specific person; it is defined as the intent to unlawfully kill a person."  (*People v. Nguyen* (2024) 103 Cal.App.5th 668, 679.)

Without offering further analysis or authority, Peraza contends that the multiple-murder special-circumstance finding may not be applied to the second degree murder conviction because it specifically applies to "the commission of the murder in the first degree."  (Italics omitted.)  It appears this contention is based on his (we determined unfounded) belief that such use "is premised on an assumption of fact, i.e., that the fetus was killed by the same act that killed Mestas" (italics omitted), which he claims we are

19

prohibited from doing. He also rejects any possibility that the instructions and findings necessarily satisfied the elements of implied malice murder based on a dangerous act. Peraza argues that, partly for that reason, *Taylor, supra*, 32 Cal.4th 863 does not apply.

We agree that *Taylor*, while important to the resolution of his direct appeal, has no application in the instant context where we examine the factual findings necessarily made by the jury's verdicts. In *Taylor*, the defendant entered the victim's (his ex-girlfriend's) apartment through a ruse, and after a struggle, shot and killed her. The victim died of a single gunshot wound to the head. The autopsy revealed that the victim was pregnant; the fetus died as a result of the victim's death. The examining pathologist could not discern that the victim was pregnant just by observing her. The jury convicted the defendant of two counts of second degree murder and found true attendant firearm enhancements. (*Taylor, supra*, 32 Cal.4th at pp. 866-867.) On appeal, the appellate court reversed the second degree feticide conviction, because there was no evidence that the defendant knew his conduct endangered fetal life and acted with disregard for it. (*Id*. at p. 867.)

On review, the Supreme Court affirmed the convictions on the basis that " '[i]t is plain that *implied* malice aforethought does not exist in the perpetrator only in relation to an intended victim. Recklessness need not be cognizant of the identity of a victim or even of his existence.' " (*Taylor, supra*, 32 Cal.4th at p. 868.) The court found that the defendant " 'knowingly put human life at grave risk when he fired his gun twice in an occupied apartment building' " (*id*. at p. 868), and because nothing required the defendant to know of the victim's pregnancy, the implied malice murder conviction as to her fetus was appropriate. (*Id*. at p. 869.)

On review from a denial of a section 1172.6 petition, *Taylor* has limited value beyond the proposition that liability for implied malice murder may exist and apply to others apart from the intended victim. Nor does *Taylor* constrain our analysis to a theory

20

of implied malice murder. Indeed, as noted, the jury was instructed on unpremeditated second degree murder.

At the procedural posture in this case, we assess the instant petition from the perspective of the jury verdicts and findings. In this case, those verdicts and findings establish that Peraza harbored express, not implied malice, as the jury found he either intentionally killed or with intent to kill, aided and abetted Mestas's premeditated murder. There is no legal way to affirm this finding with respect to Mestas but reject it with respect to the fetus that was killed as a result of Mestas's death. "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) Accordingly, a "defendant can be liable for the unlawful killings of both the intended victims and any unintended victims." (*People v. Concha* (2009) 47 Cal.4th 653, 660.) Thus, once the jury found Peraza harbored express malice in Mestas's killing, the jury necessarily found he harbored express malice and was either the killer or aider and abettor in the killing of the fetus. Because section 1172.6 relief is precluded as a matter of law, Peraza is not entitled to an evidentiary hearing on the second degree murder conviction. (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 ["when the charged offense and the intended offense—murder or attempted murder—are the same, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator"].) We therefore conclude that the error in failing to appoint counsel and hold a prima facie hearing on the second degree murder conviction was harmless.

C. Attempted Murder

We conclude differently with respect to Peraza's attempted murder conviction; we cannot say the trial court's failure to appoint counsel was harmless with respect to this conviction. Nor can we say that as a matter of law the jury's verdicts and findings in light of the instructions preclude relief under section 1172.6.

Here, none of the verdicts conclusively establish that Peraza was the shooter in the offenses against Giminez. Indeed, Peraza was not charged with personally using or

21

discharging a weapon in connection with the offenses against Giminez, and the jury was not asked to decide whether Peraza was the shooter in those offenses. Accordingly, the record does not refute Peraza's claim that he was not the actual shooter with respect to Giminez. (Cf. *People v. Patton* (2023) 89 Cal.App.5th 649, 657 [the actual perpetrator of the attempted murder is ineligible for resentencing as a matter of law].)

As previously noted, Senate Bill 1437 and Senate Bill No. 775 made statutory changes to California's murder laws effectively eliminating the natural and probable consequences doctrine as a theory of attempted murder. (See, e.g., *People v. Nino* (2025) 111 Cal.App.5th 844, 850-851; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1065.) Thus, unless the record of conviction conclusively demonstrates that Peraza was not found guilty of attempted murder based on a theory of natural and probable consequences, he is potentially eligible for relief under section 1172.6. Section 1172.6 authorizes resentencing relief only if the petitioner was convicted under the natural and probable consequences doctrine. (See § 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition" for resentencing]; *People v. Coley, supra*, 77 Cal.App.5th at p. 548 [§ 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

In addition to instructing the jury regarding aiding and abetting and the natural and probable consequences theories, the court instructed with the following: "A person discharged a firearm at an inhabited dwelling house and the discharge of the firearm was . . . done willfully and maliciously." (See CALJIC No. 9.03.) And "[i]n order to prove attempted murder, each of the following elements must be proved: [¶] Number one, a direct but ineffectual act was done by one person towards killing another human being; [¶] And two, the person committing the act harbored express malice aforethought, namely a specific intent to kill unlawfully another human being." (See CALJIC No. 8.66.) Finally, the court instructed the jury with premeditated attempted murder,

22

which stated in part: "To constitute willful, deliberate, and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being." (See CALJIC No. 8.67.)

At trial, there were two separate events involving Giminez. The evidence suggested that Valdez first shot at him in his apartment and defendants later returned to shoot at his apartment from the street. Although the prosecutor argued in closing arguments that shooting at the inhabited dwelling constituted a second event vis-à-vis the attempted murder, the instructions and verdicts do not distinguish between the two events. The jury found Peraza guilty of the attempted murder of Giminez and of shooting at an inhabited dwelling (where Giminez lived) and found true the special finding that the attempted murder was premeditated.

But the instructions that guided the verdicts did not include all the elements of direct aiding and abetting liability for attempted murder. First, the instructions did not require the jury to find that Peraza had the specific intent to kill. (See *People v. McCoy, supra*, 25 Cal.4th at p. 1118 [a defendant who is guilty of attempted murder under a direct aiding and abetting theory must have the specific intent to kill].) Rather, the attempted murder instruction required that "the person committing the act harbored express malice." And because the attempted murder instruction did not specifically refer to the aiding and abetting instruction, the jury was not informed whether or how to apply either the instruction on aiding and abetting or the instruction regarding aiding and abetting under the natural and probable consequences doctrine in conjunction with the attempted murder instruction. The jury could have relied on either or neither instruction.

Even if the jury relied on the aiding and abetting instruction with respect to the attempted murder, that instruction did not require the aider and abettor to share the perpetrator's specific intent to kill but only "knowledge of the [perpetrator's] unlawful

23

purpose" and intentional aiding in "the commission of the crime." Because "the crime" is not identified within the aiding and abetting instruction, this potentially applied to all the charged offenses against Giminez. And, although the jury found true the allegation that the attempted murder was premeditated, in so doing, the jury was required to find "the attempted murder was preceded and accompanied by a clear, deliberate intent to kill," which required the "*would-be slayer*" to "weigh and consider the question of killing" before deciding to kill and taking an ineffectual step towards doing so. (Italics added.) Unlike in the multiple-murder special-circumstances instruction that required the jury to assign culpability to each defendant, nothing in the premeditated attempted murder instruction directs the jury to findings it must make specifically as to whether Peraza himself acted with premeditation and deliberation. Thus, the jury's determination that *the perpetrator* committed the attempted murder willfully, deliberately, and with premeditation cannot be said, as a matter of law, to be tethered specifically to Peraza. Accordingly, these instructions left open the possibility that the natural and probable consequences theory could apply to determine Peraza's culpability with respect to the attempted murder. (Cf. *People v. Ramos* (2024) 103 Cal.App.5th 460, 465 [petition properly denied where the defendant admitted he had aided and abetted the attempted murder with the specific intent to kill].)

The People contend that the jury could not have found Peraza guilty of attempted murder under a natural and probable consequence of a different offense because, (1) as given, CALJIC No. 3.02 did not define any target crime and (2) the prosecutor did not argue natural and probable consequences liability at trial. But we agree with Peraza that the failure to identify a specific target crime while instructing with CALJIC No. 3.02 broadened the reach of the natural and probable consequences doctrine to include liability for aiding and abetting other unspecified criminal behavior. Indeed, the *Prettyman* court explained that omitting the element of the instruction identifying the target crime is error *because* it impermissibly allows the jury to convict the defendant of murder based on its

24

belief that "the defendant intended to assist and/or encourage unspecified 'nefarious' conduct" of which murder was a natural and probable consequence. (*People v. Prettyman, supra*, 14 Cal.4th at p. 268.)

Contrary to the People's claim, it is irrelevant for our purposes that giving CALJIC No. 3.02 in error was found harmless on direct appeal because, in part, the parties did not argue that theory. (See *People v. Prettyman, supra*, 14 Cal.4th at pp. 270-274 [when the parties do not argue natural and probable consequence the instruction must name a target offense to avoid the possibility the jury engaged in unguided speculation].) At the eligibility stage of the section 1172.6 inquiry, we take Peraza's assertions as true unless a fact in the record refutes them as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 971.) Here, the fact that the prosecutor did not argue the natural and probable consequences doctrine does not establish, as a matter of law, that the jury did not rely on the trial court's instruction that it could convict Peraza because murder is the natural and probable consequence of shooting at an inhabited dwelling.

In sum, Peraza is not barred from eligibility to seek relief under section 1172.6 as to his attempted murder conviction.

D. Conduct Credits

The People also point out, and Peraza does not dispute, that the trial court erred in awarding conduct credits. Peraza received not only credit for actual days in custody before sentencing but also 123 days of conduct credits. This was improper under section 2933.2, which prohibits presentence conduct credits for one convicted of murder. (§ 2933.2, subds. (a), (c); *People v. Herrera* (2001) 88 Cal.App.4th 1353, 1366 ["plain language of section 2933.2 prohibits a grant of presentence conduct credits to convicted murderers after the effective date of the statute"]; *People v. McNamee* (2002) 96 Cal.App.4th 66, 69.) Such an error results in an unauthorized sentence, and it may be corrected even if raised by the People for the first time on appeal. (*People v. Francisco*

(1994) 22 Cal.App.4th 1180, 1193.)  The award of conduct credits must therefore be stricken.

We further note that in our prior decision in case No. C092159, we remanded the matter to allow the trial court to recalculate Peraza's custody credits.  (*People v. Peraza, supra*, C092159.)  Our review of the record indicates his custody credits were not updated; the custody credits award remained static on all the abstracts of judgment issued in 2000, 2005, 2014, and 2023.  As we noted in our prior opinion, "When a sentence is modified while defendant is serving the sentence, the trial court must update defendant's actual custody credits up to that point.  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37.)" (*People v. Peraza, supra*, C092159.)  The custody credits must be recalculated, and we remand the matter for the trial court to do so.

### DISPOSITION

The postjudgment order denying Peraza's section 1172.6 petition is reversed as to the attempted murder conviction and is otherwise affirmed.  The matter is remanded to the trial court for the issuance of an order to show cause and an evidentiary hearing pursuant to section 1172.6.  On remand, the trial court is to update Peraza's custody credits and to give effect to our order striking the conduct credits.

/s/
EARL, P. J.

We concur:

/s/
BOULWARE EURIE, J.

/s/
MESIWALA, J.

26